Frederick H. Cowles, Appellant, *v*. Sgobel & Day, etc., Respondent.

(Supreme Court, Appellate Term, First Department, January, 1919.)

Custom — what is a custom of trade — sales — when alleged custom of trade will not be enforced — evidence — commission merchants.

A custom of trade to be enforced must be reasonable.

Plaintiff, a grower of fruit in Oregon, delivered to defendant, a commission merchant, to be sold for plaintiff's account, two boxes of Bartlett pears, a part of a carload of fresh fruit consigned to defendant at New York city. Upon arrival at the point of destination, the top layer of boxes of pears was found to be riper than the others, a customary condition, owing to the greater heat at the top of the car. The defendant sold the entire carload at the dock in separate lots graded according to size and condition. *Held*, that plaintiff was entitled to recover for his pears an amount measured by the amount received by defendant at the sale for a box of fruit of the grade in which plaintiff's fruit was sold less his *pro rata* share of freight and other shipping expenses and commissions, and less his *pro rata* share of the "ripers" as *pro rated* on the whole number of boxes in the carload.

An alleged custom of trade which would permit defendant to establish the same average price for every box of pears in the car regardless of size and of the amount received for the different sizes, thus giving a shipper of an inferior grade of fruit a great advantage, is inequitable and unreasonable and will not be enforced.

The absence of evidence that plaintiff had knowledge of such a custom or that in default of knowledge that the custom had existed for so long a time as to charge plaintiff with knowledge thereof, was a fatal objection to the custom, even assuming that it would otherwise be allowed.

Lehman, J., dissents.

Appeal by plaintiff from a judgment of the Municipal Court of the city of New York, borough of Manhattan, first district, dismissing the complaint.

Appellate Term, First Department, January, 1919.   [Vol. 105.

C. Monteith Gilpin, for appellant.

Charles A. Brodek (George V. Smith, of counsel), for respondent.

FINCH, J.‍ While the amount involved in this case is very small, there is presented a matter of importance to the particular business.

The plaintiff, a grower of fruit in Oregon, delivered to defendant, a commission merchant, two boxes of Bartlett pears to be shipped to New York and sold for plaintiff's account. The shipment was part of a car-load of fresh fruit consigned to the defendant and com-posed of boxes of different size pears. Upon the arrival of the carload of pears in New York city the top layer of boxes of pears was found to be riper than the others, which is a customary condition, owing to the greater heat at the top of the car. The defendant sold the entire carload of pears at the dock, in separate lots graded according to size and condition; that is, the largest size pears being the size shipped by the plaintiff brought one dollar and seventy cents. a box for those in prime condition, called " greens," and one dollar and fifteen cents a box for those of the same size, which were at the top of the car, called " ripers." The other fruit shipped in the same car brought one dollar and forty-five cents and one dollar and thirty cents per box, respectively, according to size, for the " greens," and one dollar and fifteen‍ cents for the " ripers." The price obtained for each lot graded according to size is conceded and also that the pears shipped by the plaintiff were of the largest size, and that those of them which were sold in the lot of " greens " brought the highest price. The plaintiff claims to be entitled to the average price brought by

this lot, including both " greens " and " ripers," less the *pro rata* share per box for freight and other shipping expense, commissions, etc. The defendant, on the other hand, claims the plaintiff is entitled to only the average price received on the whole carload of pears, disregarding the various sizes of fruit and less the same freight and expenses, basing this contention upon an alleged custom of the trade. It appears that so many carloads of fruit are received in New York city at the season when fruit is ripe for shipping that it is the custom to segregate all the boxes of ripers without ascertaining to what shippers such losses belong, and in the same manner to grade according to size all the remainder of the fruit. Because of this no shipper is ever able to ascertain whether his fruit arrived as " ripers " or in good condition. The plaintiff makes no objection to this custom and both parties thus concede that the loss due to " ripers " should in fairness be *pro rated* equally among all the shippers in the same way as freight and expenses since it is a matter of chance as to which boxes shall be packed in the layer next to the top of the car and so become " ripers." By means of this custom therefore the plaintiff has obviated what would otherwise be incumbent upon him to show, namely, whether his pears were received as " ripers " or " greens."

The defendant seeks to establish another custom to which the plaintiff strenuously objects and this is the real issue in the case. This alleged custom would permit the defendant to establish the same average price for every box of pears in the car, regardless of size and regardless of the amount received by the defendant for the different sizes. The defendant arrives at this average price by dividing the total amount received for the sale of all the boxes of pears in each car by the number of boxes in the car. A mere statement of this

Appellate Term, First Department, January, 1919.    [Vol. 105.

custom carries its own refutation since the plaintiff is clearly entitled to have the defendant account for the value of the goods shipped to him and such a custom would give the shipper of an inferior grade of fruit a great advantage and would discourage the production and shipment of the more valuable grades of fruit. A custom to be enforced by the court must be reasonable (*Fuller* v. *Robinson,* 86 N. Y. 306, 309) and hence the court should not enforce so inequitable and unreasonable a custom. Even assuming, however, that this custom would otherwise be allowed there is another and fatal objection to it, namely, that it does not appear either that plaintiff had knowledge of this custom or that in default of such knowledge that the custom had existed for so long a time as to hold that the plaintiff should have had knowledge of the same. *Rickerson* v. *Hartford Fire Ins. Co.,* 149 N. Y. 307.

It follows that the plaintiff is entitled to recover an amount for his two boxes of fruit measured by the amount received for a box of fruit of the grade in which his fruit was sold, less his *pro rata* share of freight and other shipping expenses and commissions, and less his *pro rata* share of the " ripers " as *pro rated* on the whole number of boxes in the carload. Had the entire carload been sold as a unit without classification a different question might have been presented, and the defendant's claim of the impracticability of classification as to sizes would have had some force. But where there was in fact such classification I can see no good reason for awarding to plaintiff a less amount than it is conceded his fruit was worth less his *pro rata* share of freight, express and depreciation.

The judgment should, therefore, be reversed, and a new trial directed with thirty dollars costs to appellant to abide the event.

PENDLETON, J. (concurring in result). Plaintiff failed to show the amount received for his goods and failed to prove any custom by which the amount due him was to be otherwise determined. If this were all the complaint should have been dismissed for failure of proof, but not on the merits. As defendant, however, mixed plaintiff's goods in the sale with others, without, so far as appears, plaintiff's consent, so that the amount received on their sale cannot be determined, they are at least liable for the average amount realized for the lots containing plaintiff's goods, which is one dollar and forty-eight cents a box, which is all plaintiff asks. It is urged that plaintiff cannot recover on this theory because it is said first there is no claim or proof that the defendant acted without plaintiff's consent in commingling the goods, and second, that the plaintiff has brought this action upon the theory that the commission merchant is not required to sell separately the fruit received from each grower, or even to note separately in which lot the fruit of each grower was included.

With this I am unable to agree. The complaint alleged and the answer admitted that the fruit was delivered to and received by defendant to be sold for account of the plaintiff. This constituted defendant the agent to sell, charged, in the absence of evidence of some special agreement, with the duty to sell and account for the proceeds. To commingle and sell them in such a way as not to be able to identify the price realized was, therefore, unauthorized and wrongful, but plaintiff may waive the wrong and elect to claim at least the average price realized for goods of that size, and there is nothing in the evidence or the complaint or the nature of the action necessarily inconsistent with this theory. Plaintiff does not by this election proceed on the theory that defendant had the

right generally to sell commingled with the fruit of
others or according to some custom of the trade, but
only affirms this particular sale at this particular price,
to wit, the average price realized for goods of that
size, and sues to recover that amount.  It seems to me
very clear that under the complaint in this case a
recovery on such cause of action is amply warranted.
The alleged custom, testified to by defendant, was not
shown to have been known to plaintiff or to have
existed so long and so generally that it must be
assumed to have been known to him and, there-
fore, was not binding.  *Rickerson* v. *Hartford Fire
Ins. Co.,* 149 N. Y. 307.  Whether inequitable and
unfair it is not necessary to decide for the pur-
poses of this appeal.  As, however, the question
may arise on the new trial it seems advisable to
consider it now.  It is often said a custom to be
enforceable must be reasonable.  Usages of trade
known to be known to the parties, or so well estab-
lished that they may be assumed to be known,
are deemed to have been incorporated into the contract
by the intention of the parties by implication, when
not inconsistent with its terms and nothing to the con-
trary has been said.  This is founded on the assumed
intention of the parties, and proof of the custom is
only another form of proving what is in effect a spe-
cific contract.  A contract when so proved is no more to
be brushed aside as unreasonable than any other con-
tract.  The doctrine of reasonableness or unreason-
ableness was never intended to substitute the opinion
of the court for that of the parties as to what is fair.
The only bearing that question can have is on the prob-
abilities of the parties having intended to adopt the
alleged custom as part of their contract.  Where its
terms, taken in connection with the subject-matter of

the contract or the relation of the parties, are such as to make it so improbable that the parties could have intended to incorporate them in the contract, that no inference or presumption of such intent is reasonably possible, they will not be deemed so incorporated. It was thus held in *Fuller* v. *Robinson,* 86 N. Y. 306, that there is no ground for such a presumption where the usage attempted to be shown is repugnant to common sense, or is based upon a disregard of the relations which exist between men or the duties which in law and morals they owe to each other.

On the same principle it was held in *Bowen* v. *Stoddard,* 10 Metc. 375, that an alleged custom that owners of ships engaged in foreign trade should be bound to accept all drafts drawn on them by the ship master involved such an unlimited liability, and was, therefore, so highly improbable that nothing less than an express agreement to that effect would warrant a finding that such was the intention. In other words, any presumption that the parties intended to incorporate it in the contract was rebutted by the circumstances of the case and the terms of the alleged custom. In the case at bar the idea or assumption that a grower of high grade fruit would be willing to accept the average price which might be realized on an entire carload in which his fruit happened by chance to find itself, a matter over which he could exercise no control and where he could have no knowledge in advance as to what class of fruit it might be made up of, thus putting all hope of profit or reward for growing, or having the reputation of growing, a high class article at the risk or hazard of a chance is so contrary to all notions of good sense or probability as to forbid any reasonable presumption that it was so intended, and the incorporation of such a provision by implication cannot be sustained.

The judgment dismissing the complaint on the

merits was error and should be reversed, and new trial ordered, with thirty dollars costs to appellant to abide the event.

Lehman, J. (dissenting). The plaintiff is a fruit grower who shipped two boxes of pears from Oregon for sale on commission to the defendant at New York through the defendant's agent in Oregon. The shipment was part of a carload consigned to the defendant, and composed of boxes of different size pears shipped by various growers. Upon the arrival in New York of the carload of pears the defendant found that the top layer of boxes of pears were over-ripe, and it seems to be conceded that carloads of pears ordinarily arrive in this condition owing to the fact that the heat in the cars is greatest at the top. The pears were invoiced to the defendants according to size. The defendant sold the entire carload at the dock. The boxes were not sold separately, but were sold in different lots, graded according to the condition and size of the contents of the boxes. The plaintiff's pears were of a large size and the boxes of over-ripe pears of that size sold at one dollar and fifteen cents per box. The boxes of pears of that size in good condition were sold at one dollar and seventy cents per box. There were one hundred and fourteen boxes of this size which were not over-ripe and were sold for the higher price and there were seventy-six boxes which were over-ripe and sold at the lower price, so that the average price obtained for pears of this size, ripe and unripe, was one dollar and forty-eight cents a box, and the plaintiff claims that he is entitled to recover from the defendant for the two boxes, the sum of two dollars and ninety-six cents less freight, commissions, etc., which would reduce the net return to the sum of sixty-two cents.

The defendant, on the other hand, claims that accord-

ing to the custom of trade in New York, after the pears
are sold in lots graded according to size and condition
as described above, the price of all the pears in the
entire carload is averaged and each shipper receives
the average return per box for the whole carload. In
the present case a large number of the boxes in the
car contained pears smaller than those which the plain-
tiff shipped and the price received for these pears was
lower than for the pears of the larger size, so that the
average price received for all the boxes in the car was
correspondingly reduced. If such a custom exists and
is binding upon these parties, then the plaintiff instead
of being entitled to sixty-two cents, as he claims, is
entitled to only fifty cents, which the defendant ten-
dered to the plaintiff before this action was begun.

The trial justice has rendered judgment on the
merits in favor of the defendant, thus holding that the
defendant's tender was sufficient. The plaintiff now
appeals from that judgment, urging that the amount
of the tender was based upon a custom which is not
shown to have been known to him and which is unfair
in itself and therefore should not be enforced by the
court. I have no doubt that the plaintiff has assumed
the burden of an appeal in a case which directly in-
volves only a few cents because he regards the deci-
sion as establishing a rule under which a shipper of
fruit is not entitled to receive from a commission mer-
chant the average price for which fruit of the same
grade and size in the same consignment has been sold
but some other sum bearing no direct relation to the
value of the fruit actually shipped and because he
believes that such a rule is unfair to himself as shipper
and to the public.

It is to be noted at the outset that where a shipper
consigns fruit or any other commodity to a commis-
sion merchant for sale, it is the duty of the consignee,

in the absence of special contract or of a special custom of trade under which the shipment may be presumed to have been made, to sell the goods consigned and account to the shipper for the amount received on such sale for these specific goods. In the present case there was concededly no special contract and the plaintiff is therefore entitled to recover the proceeds of the two boxes shipped by him and nothing else unless the shipment was governed by a special custom of trade. The plaintiff, however, does not claim the exact amount received for the two boxes shipped by him and is not in any position to prove this amount. If the two boxes were over-ripe on arrival then they were sold for one dollar and fifteen cents each and the defendant has already tendered more than the amount to which the plaintiff would be entitled; if the two boxes were not over-ripe then the plaintiff would be entitled not merely to more than the amount of the tender but to more than the amount he now demands. In the absence of proof as to the condition of these particular boxes, the court, therefore, could not determine whether the tender was sufficient or insufficient and could not give any judgment in favor of the plaintiff based on the amount actually received for the fruit. Possibly it might be urged that if the defendant intermingled the plaintiff's boxes with goods received from other parties without his consent so that the amount received upon their sale cannot be determined, it would be liable at least for the average amount realized for the various lots of boxes of pears of the same size as those shipped by the plaintiff, but even if such rule of liability could be applied under appropriate circumstances, in the present case there is neither claim nor proof that the commission merchant acted without the shipper's consent in commingling the fruit with other fruit of the same size. As a matter of fact it is quite evident that the

plaintiff did not expect the commission merchant to sell his fruit separately and to account for the proceeds of the sale of his specific goods.

On the contrary, he has brought this action upon the theory that the commission merchant is not required to sell separately the fruit received from each grower or even required to note in which lot the fruit of each grower was included, but may sell the fruit received in lots graded according to size and condition without noting in which lot the fruit of each specific shipper was included, and, as stated above, he is claiming only the average price received for all pears of the same size as those shipped by himself regardless of the condition in which they were received. There is, as a matter of fact, no dispute but that a custom existed in the fruit trade in New York for the sale of fruit in the manner in which this defendant conducted the sale of the fruit shipped by the plaintiff and the case really narrowed itself down to the question as to the manner in which the defendant is bound to account to the plaintiff for his share of the receipts of such sale.

If this court were called upon to make a contract between the shipper and commission merchant as to the manner in which commission merchants should account to their customers for the fruit consigned to them, it might well be that we should consider the method suggested by the plaintiff as the fairest method by which the returns upon the sale of fruit received could be apportioned to the different shippers. The court, however, has no such power and can merely enforce the contract which the parties have actually made. In the present case, since they made no express contract as to the manner in which the shipper shall be compensated for the fruit shipped and the plaintiff practically concedes that the goods which he shipped were to be sold in accordance with the custom of trade,

mingled with other fruit shipped in the same carload, the plaintiff can recover only for the amount to which he is entitled under the custom of trade governing such sales.

From the undisputed evidence it appears that it is the custom of the trade that the shipper shall receive only the average amount received upon the sale of the carload of fruit regardless of the size or grade of his particular shipment. It may be that the plaintiff did not know of the existence of this custom, but since he evidently did understand that the commission merchant was not obliged to sell his goods separately and account in the ordinary manner for the proceeds but that some special custom existed in the trade which would govern the manner in which such sale should be made and which must necessarily also affect the manner in which the commission merchant would or could account for the proceeds of the sale, and since the plaintiff made no inquiry as to the nature of the custom and indicated no intention that the rights of the parties should not be determined in accordance therewith, it seems to me that we must regard such custom as binding upon the plaintiff in the same manner as if he had expressly agreed to it.

Moreover, that custom is not, in my opinion, so evidently unfair that we would have a right to interfere with it. The commission merchant does not receive more than the amount of his commission and the custom concerns only the manner in which the net proceeds are distributed among the shippers. If a shipper of smaller pears should bring an action for the amount to which he would be entitled under this custom of trade, then it seems to me quite evident that the commission merchant could not urge that the custom was unfair, and the same rule must hold good where the custom is disadvantageous to the shipper as where the

custom works to his advantage. If the custom seems unfair to the shippers, they can make specific contracts in regard to the manner in which they should receive payment for their shipments.

Judgment is therefore affirmed, with costs.

Judgment reversed and new trial ordered, with costs to appellant to abide event.